# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 21-842V
UNPUBLISHED

| | |
|---|---|
| HEMA MULLUR,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: August 27, 2024<br><br>Special Processing Unit (SPU);<br>Entitlement to Compensation; Ruling<br>on the Record; Influenza Vaccine;<br>Shoulder Injury Related to Vaccine<br>Administration (SIRVA) |

*Laura Levenberg*, Muller Brazil, LLP, Dresher, PA, for petitioner.

*Parisa Tabassian*, U.S. Department of Justice, Washington, DC, for respondent.

### RULING ON ENTITLEMENT[1]

On February 2, 2021, Hema Mullur filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on September 26, 2020. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters. For the reasons set forth below, I find that Petitioner is entitled to compensation.

### I. Relevant Procedural History

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

Petitioner filed this claim on February 2, 2021. ECF No. 1. On January 24, 2023, Petitioner filed a motion for a ruling on the record. Motion for a Ruling on the Record ("Mot."), ECF No. 29. Respondent filed a Rule 4(c) Report and response to Petitioner's motion on March 21, 2023. Respondent's Combined Rule 4(c) Report and Response to Petitioner's Motion for a Ruling on the Record ("Opp."), ECF No. 31. Petitioner filed a reply on March 28, 2023. Petitioner's Reply to Respondent's Response to Petitioner's Motion for Ruling on the Record ("Reply"), ECF No. 32.

## II.     Petitioner's Medical Records

On September 26, 2020, Petitioner received a flu vaccine. Ex. 7 at 5. The record states the vaccination was administered in Petitioner's left shoulder – although Petitioner alleges a right SIRVA.

Petitioner thereafter communicated with her primary care provider on October 23, 2020, via text message. Ex. 10 at 1-4. The message states "I got a flu shot Sept 26 and had pain and soreness worse than usual right after, but assumed it would go away. Since then, pain and mobility in my shoulder has continued to get worse." She was prescribed 800 mg of Ibuprofen at that time. Ex. 10 at 2.

On November 6, 2020, Petitioner saw Dr. Adriana Guerra. Ex. 3 at 10. Petitioner complained of right shoulder pain "since flu shot" on September 26th. *Id.* Further, she reported slight pain with minor movement, "lots of pain with larger movement…." *Id.* She was diagnosed with tenosynovitis and nerve inflammation. *Id.* at 12. A Medrol Dosepak was prescribed, which helped relieve her pain. Ex. 10 at 3. On November 19, 2020, Petitioner again complained of right shoulder pain in a text message. *Id*. Petitioner wrote "as expected, felt great while taking the steroids…. My last day taking them was Monday, and now the pain is back…." *Id.*

An MRI was performed on December 3, 2020. Ex. 3 at 14. The history states "[r]ight shoulder and deltoid pain after flu injection, even after nsaids and steroid, decrease in range of motion." *Id.* The impression included a "SIRVA" and showed signs consistent with bone marrow edema, and mild bursitis. *Id.*

Six months later, Petitioner was seen at Texas Orthopedics on June 8, 2021. Ex. 8 at 8. She complained of "right shoulder pain since September 2020, when she had a flu shot." Ex. *Id.* An examination showed full range of motion with "slight positive apprehension, localized to the anterior aspect of the shoulder, with abduction and

rotation." Petitioner was assessed with right shoulder pain, bursitis, tendinitis, and pain after vaccination.

### III.     Affidavit Evidence

Petitioner submitted two affidavits in support of her claim. Ex. 1, 11. She stated that she is a news anchor and was asked to participate in a vaccination clinic "to encourage people in the city to get flu shot." Ex. 11 at 1. Additionally, there is a photograph of her at the clinic receiving the vaccine in her right arm, citing Ex. 9, Ex. 11 at 1. Further, Petitioner stated that she learned on July 17, 2021, that she was pregnant, and "knew that any further imaging or medication would likely not be possible so [she] chose to not proceed with trying to get additional treatment." *Id.* at 2.

### IV.     Parties' Arguments

Petitioner asserts that she suffered a right SIRVA Table as defined by the Vaccine Injury Table, and that the vaccination was administered in her right shoulder. Mot. at 7-9. Respondent contends that Petitioner has failed to show she is entitled to compensation. Specifically, Respondent argues that the records indicate her vaccination was administered in her left arm – meaning she cannot sustain a claim based on a right-side shoulder injury. Opp. at 5-6. Respondent also argues that Petitioner cannot meet the definition of a SIRVA because there is no record of onset within 48-hours of vaccination, or decreased range of motion, and that she failed to establish her symptoms lasted for more than six months. *Id.* at 6-7.

### V.      Fact Findings and Ruling on Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for his injury.  *See* § 11(c)(1)(A)(B)(D)(E).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical

4

professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 204 (2013) (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### A. Severity Requirement

The first issue to be resolved is whether Petitioner has demonstrated that she suffered "residual effects or complications of [the injury alleged] for more than six months after the administration of the vaccine," as required for eligibility under the Vaccine Program. Section 11(c)(1)(D)(i).

There is no dispute that Petitioner received the flu vaccine on September 26, 2020, and she therefore must demonstrate by preponderant evidence that her residual symptoms continued at least through March 26, 2021 (assuming onset of pain the day of vaccination). *See, e.g., Herren v. Sec'y of Health & Human Servs.*, No. 13-100V, 2014 WL 3889070, at *2 (Fed. Cl. Spec. Mstr. July 18, 2014); *see also Hinnefeld v. Sec'y of Health & Human Servs.*, No. 11-328V, 2012 WL 1608839, at *4-5 (Fed. Cl. Spec. Mstr. Mar. 30, 2012) (dismissing case where medical history revealed that petitioner's injury resolved less than two months after onset).

The record establishes that Petitioner's initial treatment occurred between October and December of 2020. Ex. 10 at 1-4; Ex. 3 at 14. There is a subsequent gap in treatment of approximately six months, with Petitioner not again seeking medical attention for her

shoulder until June 2021 – although at that time she reported "right shoulder pain *since September 2020, when she had a flu shot*." Ex. 8 at 9 (emphasis added).

Respondent argues that the treatment gap defeats a finding of severity. Opp. at 7. However, there is no requirement that any Program petitioner consistently and frequently seek treatment for her injury. And treatment gaps that are not inordinately long can overlap the six-month deadline. It is enough that the evidence establishes a petitioner continued to suffer from shoulder pain *beyond* the six-month period – and that the first post-gap treatment event persuasively relate back to the claim that the pain is vaccination-associated. Here, the record suggests such a relation, and the gap itself was not so long as to suggest injury resolution (or exacerbation by intervening events) was likely.

I thus find severity is satisfied. However, the consistently light history of treatment suggests a mild injury - which will impact what amount of damages are proper.

### B. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the QAI requirements for a Table SIRVA.

#### 1. Petitioner Likely Received the Flu Vaccine in her Right Shoulder

Respondent contends that, although Petitioner alleges a right SIRVA, the vaccine records indicate that the vaccine was received in her left arm. Opp. at 5-6. Respondent's reading of the administration record is literally correct (Ex. 7 at 5 (stating the vaccine was administered in Petitioner's left arm)), but his argument does not take into account the totality of the evidence, which soundly supports a *right-side* vaccine administration finding.

The overall medical records establish that Petitioner consistently and repeatedly reported to treaters right shoulder pain following a flu vaccine received *in that shoulder*. *See*, *e.g.*, Ex. 3 at 10 (record stating that Petitioner reported right shoulder pain "since flu shot"); *id.* at 14 (MRI noting right shoulder and deltoid pain "after flu injection"); Ex. 8 at 8 (noting "right shoulder pain since … she had a flu shot."). Additionally, Petitioner's declarations provide corroborating evidence. For example, she stated that the vaccine was given in her right shoulder, and provided photographic evidence to that effect. Ex. 11 at 1, Ex. 9.

The only contrary record comes from the administration record itself. While that document is both the first contemporaneous item of evidence relevant to this fact dispute,

it finds no other corroboration in the overall record – and I do not give it great weight, since it is consistently observed in SIRVA cases in the Program that computer-generated administration records are frequently incorrect, or are completed based on assumptions about what arm will receive the vaccine in most cases – but without taking into account the relevant petitioner's circumstances. *See, e.g., Schoenborn v. Sec'y of Health & Hum. Servs.*, No. 21-0227V, 2024 WL 1342999, at *6 (Fed. Cl. Feb. 28, 2024) (noting that it is repeatedly observed in Program cases that "it is not unusual for the information regarding site of vaccination in computerized systems to be incorrect") (internal citations omitted); *Cook v. Sec'y of Health & Hum. Servs.*, No. 21-1029V, 2022 WL 3012304, at *4 (Fed. Cl. June 29, 2022) (noting that information regarding site of vaccination in computerized systems is not always correct and often uses a 'dropdown' menu which may not be updated each time a separate vaccine is administered to a different individual).

### 2. No Prior Right Shoulder Condition or Injury Would Explain Petitioner's Symptoms

Another requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). Petitioner's records do not contain evidence of a prior condition or injury that would explain her current symptoms. Therefore, Petitioner meets this requirement.

### 3. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of her Vaccination

The medical records preponderantly establish onset of injury close-in-time to vaccination. Petitioner first reported shoulder pain on October 23, 2020, less than one month after her vaccination. Ex. 10 at 2. Thereafter, Petitioner continued to link her shoulder pain temporally to the flu vaccine. *See* Ex. 3 at 10 (record from November 6, 2020 wherein Petitioner complained of right shoulder pain "since flu shot"); Ex. 8 at 8 (record from June 8, 2021, stating her pain started after a flu shot).

Respondent argues that Petitioner's descriptions of the temporal start of her shoulder pain are vague, given the use of the word "since." Opp. at 6. Even so, a finding of proper onset can be made based on such a record. Program petitioners are not required to seek medical care within 48 hours of vaccination, or provide detailed chronological histories of the exact onset and course of treatment. Further, as noted above, Petitioner consistently linked her shoulder pain to the September flu vaccine. Accordingly, there is preponderant evidence that establishes the onset of Petitioner's left shoulder pain more likely than not occurred within 48-hours of vaccination.

### 4. Petitioner's Pain and Reduced Range of Motion was Limited to her Right Shoulder

The evidence supports the conclusion that Petitioner's pain and reduced range of motion was limited to her right shoulder. Respondent argues that there is no documentation of decreased range of motion in the overall record. Opp. at 6. But this is inaccurate. On December 3, 2020, Petitioner's history included right shoulder and deltoid pain and "decrease in range of motion." Ex. 3 at 14. And there is no other record evidence, such as an exam finding, suggesting that her range of motion was normal. Accordingly, preponderant evidence establishes that Petitioner's pain was limited to her right shoulder, and there is at least some evidence that she experienced reduced range of motion.

### 5. There is No Evidence of Another Condition or Abnormality that would Explain Petitioner's Current Symptoms

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent does not contest this aspect of Petitioner's claim, and the records do not contain any evidence that another condition or abnormality that would explain Petitioner's symptoms.

## C. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). The overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine on September 26, 2020, in the United States. Ex. 7 at 5; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Ex. 11 at 2; Section 11(c)(1)(E) (lack of prior civil award).

As stated above, I have found that the onset of Petitioner's right shoulder pain occurred within 48 hours of her vaccination, and that the vaccination was administered in her right shoulder. *See* 42 C.F.R. § 100.3(c)(10)(ii) (setting forth this requirement). I have also found that there is no other condition which would explain Petitioner's current symptoms. 42 C.F.R. § 100.3(a)(XIV)(B) (listing a time frame of 48 hours for a Table

SIRVA following receipt of the influenza vaccine). Therefore, Petitioner has satisfied all requirements for a Table SIRVA.

      Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

## Conclusion

**In view of the evidence of record, I find that there is preponderant evidence that Petitioner satisfies the QAI requirements for a Table SIRVA. Further, based on the evidence of record, I find that Petitioner is entitled to compensation.**

**IT IS SO ORDERED.**

                                **s/Brian H. Corcoran**
                                Brian H. Corcoran
                                Chief Special Master